Next case is Thomas Fritsch v. Veterans Affairs, 057196. When you're ready, Mr. Wiedemeyer. Thank you, Your Honor. Good afternoon. May it please the Court, Section 3.105D's language is unequivocal. It establishes that once a disability has been found to be service-connected, a different diagnosis rendered after that finding cannot serve to sever service connection unless a physician or other proper medical authority certifies that the original diagnosis was clearly erroneous. Has to use those words? The physician, the certifying physician? Uh-huh. The word definitely, with respect to the words, clearly erroneous. With respect to the word certifies, preferably that would be the language the physician would use. However, I won't say that in all instances the word certify, for example. Isn't it clear from the physician's opinion that it was clearly erroneous? Not at all, Your Honor. The physician did not use the word clear or clearly to modify the word error. The physician was simply preparing a discharge summary of the veteran's hospitalization. There's no indication in the record that this physician was even aware of the necessity for there to be an opinion on the original diagnosis. Doctors have to use legal words? When the Veterans Affairs Department wishes to rely upon that doctor's opinion to sever a previously awarded benefit, yes, Your Honor. The medical opinion VA chooses to rely on has to contain the word, by their own regular words of their own regulation, has to include the word clearly erroneous. Of course, this is a Q case, too, isn't it? That's correct, Your Honor. Is that the kind of error which would be outcome determinative? Yes, it is. The clear and unmistakable error, one of the situations in which that can be successfully raised and was the basis for the Q argument below, before the agency in this case, was that a pertinent statute or regulation was misapplied. And the Q argument that was raised before the agency here was that Section 3.105D was misapplied because the agency relied on a medical opinion that did not state that the original diagnosis was clearly erroneous. Is there a legal question here? There certainly is. The legal question is the Veterans Court's interpretation of 3.105D to allow severance of service connection when there is nothing in the record from a medical professional stating that the diagnosis on which service connection is based. Isn't that application of law to fact? It would be if there was... Looking to see what's in the record and see if it meets a legal test? It would be if there was any dispute in the record as to whether a physician or other medical professional had found that the original diagnosis was clearly erroneous. The Veterans Court acknowledged in its opinion that the pertinent medical evidence in this case, Dr. Keller's opinion, did not include the word clear or clearly to modify erroneous. And the Secretary does not argue that there is such an opinion in this record that from a physician or other medical professional that the original diagnosis was clearly erroneous. And absent something in the record that arguably states clear error or clearly erroneous, then the Veterans Court necessarily interprets the regulation to allow severance on something less. And just to repeat, I know you answered Judge Lurie's question, but on the outcome determinative issue, your view is that if you are correct, then there was indeed no valid certification at all. And therefore, your client automatically wins. In other words, this is an outcome determinative decision. That's correct, Your Honor. If the regulation requires what it says it requires, namely severance, namely that a doctor or other medical professional states that the original diagnosis was clear error. If that's what the regulation means, because there was no such opinion before the agency in 1971, then as a matter of law, that severance was improper. And the finding of service connection would be reinstated. But the physician said error. Physician said that the diagnosis- He didn't say clear error. That's correct, Your Honor. In the absence of the- So you take him at his word, it's error, didn't meet the test, so it's outcome determinative, he wins. Because that was the medical opinion- Or do we not decide that? I'm sorry, Your Honor. Do we not decide that? Because that is application of law to fact. We decide that error is not clear error. The regulation says clear error. It's got to go back. That is correct, Your Honor. There is no factual analysis necessary here. It's simply a plain reading of language based upon the interpretation of the statute- If this court- Of the regulation, excuse me. If this court finds that no magic words are necessary, neither certification nor clear error, do you lose? No, Your Honor, because there's a third problem, and that is the requirement in the regulation that the determination be made by a physician or by proper medical authority. Unless there's a piece of paper in the record that says clear error or clearly erroneous, then necessarily it's an adjudicator, or in this case on appeal, a judge, deciding what is or what is not clear error. Absent a physician saying clear error, there is no basis for there to be a finding of clear error unless a lay adjudicator makes that finding. And the regulation clearly requires that the clear error finding be made by a medical professional. But Judge Rader's question implies that this court might determine that there is equivalent language to clear error. And if we decide that, you lose. The case is over. I respectfully disagree, Your Honor. Because the physician said error. The physician said what we might decide is the equivalent of clear error. I respectfully disagree because even if error can mean clear error in some instances— Of course, there's a whole report there. There isn't just one word, error. There's a paragraph. So it's the totality of it rather than just one word, which is the equivalent. The examining physician said that the schizophrenic reaction diagnosis, which was the one on which service connection was based, was in error, and that the diagnosis she was making, which was passive-aggressive personality disorder, was correct. If the regulation requires something less than it says, namely a certification— it can be roughly defined as to attest to something or to authenticate it in writing. So you say the doctor's statement has two defects. The Veterans Court agreed with our argument that the doctor's statement was not a certification. It found that to be not outcome-determinative error. How do you certify? Do you need a special form? Do you say, I hereby certify, or is hereby not necessary? Well, as I said earlier, while the specific word certify may not be always necessary, the fact that that word appears in the regulation rather than the simple word state or conclude suggests that the physician is specifically tasked with reviewing this question, with this issue. The Veterans Court agreed with our argument that it was very likely that Dr. Keller did not write this discharge summary for the purposes of the regional office using it to set her service connection. It was simply a discussion of the veteran's state of disability at the time of his separation from the hospital. Well, that's what you want doctors to do. You don't want doctors to shoot at a regulation and say, I'm going to get this person past that rig. You want a doctor to make a medical judgment. The patient does, but if the agency wants to rely on what that doctor says to take away a benefit that has already been lawfully awarded, there's due process, legal, and fundamental fairness requirement that it apply strictly its own regulation for severing lawfully awarded benefits. The regulation has not always said clear error. It at one time said what the secretary wishes the court to interpret it now as saying, which is that service connection may be severed if the doctor finds that the original diagnosis was not correct. If that's how the regulation read today, then likely there would be no case here. However, the secretary amended not correct in 1959 to read clearly erroneous. That amendment has to have some meaning. I'm not sure I agree there wouldn't be a case here. Did this physician ever look back at the original diagnosis and reach the conclusion that that original diagnosis was erroneous, clearly erroneous, whatever? No, Your Honor. Isn't that your point? That the physician is making an independent judgment, not reviewing an original diagnosis for sufficiency to maintain benefits. That's a better way of stating what I was describing as my certification argument with respect to this discharge summary not being intended to be a document on which service connection would be severed. The regulation requires the certification to be based on all accumulated evidence. There's no indication in Dr. Keller's discharge summary that she had reviewed the service medical records diagnosing schizophrenic reaction for purposes of deciding whether that diagnosis at that point in time was clearly erroneous. She simply was focusing on the point in time at which she was discharging him from the hospital and concluded that at that time the schizophrenic reaction diagnosis was inerrant. And the board said that was the equivalent. I think the real problem you have to deal with is why isn't that an equivalent of certification? Why isn't that sufficient to meet the standards of the regulation as found by the court and the board? The board found that the regulation contained, the board in the Q claim in 2003 found that the regulation contains no requirement for special wording or mantra, which is plainly wrong. It requires a finding that the original diagnosis was clearly erroneous. And absent that, unless clearly erroneous can be construed to mean simple error, then there's no legal basis. Well, that's back to just terminology. Unless there are other questions, I'd like to reserve the rest of my rebuttal time. We will do that. Thank you, Your Honor. Ms. Kirshner, is Mr. Wiedemeyer in error or in clear error? I assume one or the other. I'm not quite sure I understand exactly where you're putting it. All right. Skip it. But here the appeal fails because the veteran has not demonstrated any harmful error in the decision below. In their reply brief, they assert that- You have a regulation that sets forth certain things that have to happen to change benefits. And it says clearly that a doctor has to look at the original diagnosis and conclude that it's clear error. Did that happen here? Yes, it did. Where does it say that Dr. Keller looked at the original diagnosis and determined that it was clear error? The doctor looked at the original diagnosis, which was a schizophrenic reaction, and she found in her conclusions that the diagnosis that it was a schizophrenic reaction was in error. Now, it's true she did not use the word clear, but she found unequivocally, unconditionally, that that original diagnosis of schizophrenic reaction was in error. But the law uses these terms very carefully. I mean, when we're reviewing, not necessarily here, but a fact finding, we don't review it for error. We review it for clear error. In other words, the law distinguishes between these linguistic concepts. So why can we conclude that error is equivalent to clear error for the purposes of this regulation? As the board and the court found, the doctor's findings in this case, the Dr. Keller's findings, were equivalent to a statement that there was clear error in the original diagnosis. And she went further, and she gave the correct diagnosis. And this appeal occurs in the context where the board found, based on all the evidence, that it was clear and unmistakable that this veteran had a passive-aggressive personality disorder. But that seems to me that the board is making the determination that there's a clear error. The board's the one that's saying this is the equivalent of clear error. Did the doctor, did Dr. Keller, look at that original diagnosis and say, whoa, that's clear error, and I hereby certify to that effect? The doctor attested in writing that the original diagnosis was erroneous. And further, what the regulation requires, we have the regulation in our statutory appendix, and it states that service connection will be severed only where evidence establishes that it is clearly and unmistakably erroneous, the burden of proof being upon the government. In the original appeal to the board, the government fully established that, and the board made factual findings which are not contested at any stage that this veteran always had a personality disorder. He had a passive-aggressive personality, and the evidence was overwhelming that that is what he had always had. Now, further, the board found that his manifestations were manifestations of that personality disorder. So these factual findings... Did the hospital report upon which you're relying include a summary of the facts, findings, and reasons as stipulated by the reg? Yes, it did. And there's not even any argument here that that part of the regulation was not satisfied. The only argument here on appeal is that because the physician, Dr. Keller, herself did not use the word clearly, that her certification is not sufficient. Here, the Veterans Administration and the board and the Veterans Court all have construed the regulation as not requiring that the physician himself use any magic words or any technical words in the certification. Here, Dr. Keller went through all of the evidence, including... saying that Dr. Keller's later diagnosis was a certification that the first one was erroneous. Does that automatically trigger cue? No, no. Because in this appeal, it is the veteran's burden to demonstrate a clearly erroneous error. There is an error. I'm assuming now for a second that there's an error, that we've hypothetically reached the conclusion that certification didn't take place for maybe the wrong language was used or maybe the doctor wasn't looking at the original or there were no summary of findings. There's an error. I'm now asking the next step, which is, is it outcome determinative? No, it's not outcome determinative. Because the board in its original opinion back in 1971, which is in the appendix at page 29, made extensive findings of fact that this veteran always did have a personality disorder, that that was the correct diagnosis. And this is based on extensive hospitalization records and also the fact that the very original diagnosis, that was based on incomplete medical evidence. That gets us into reviewing facts, which we can't do, right? Just as a matter of law, is there a problem here with certification? If there's an error in that certification, then would that be outcome determinative? It's not outcome determinative. Because, first of all, as I said, the board in 1971, and then again in 2003 in its decision, made these extensive findings that this veteran always had a personality disorder. And there's not any dispute here that this veteran, in fact, really always had a personality disorder. But how can you say? I'm misunderstanding because I don't understand how you can say it's not outcome determinative. If, indeed, essentially if we were to rule that you needed to say clear error and absent that, there's no certification as required by the regulation, in the absence of a certification, if there had been no certification, therefore, no adequate certification back in 1971, can't we assume then that severance would have been improper? It would have changed the result here? No. I mean, the Veterans Administration, if there had never been any certification whatsoever, you couldn't assume that that wouldn't be outcome determinative? Not in the context of this case, because in this case it has been conceded from day one that this veteran always had a personality disorder. And you have extensive findings of fact by the board in 1971 and then again in 2003 that this veteran always did have a personality disorder. But doesn't the regulation require a certification? And in the absence of any kind of certification whatsoever, isn't the government precluded from severing the requirement? That's not right. And the reason it's not right is because it is the veteran's burden to demonstrate an outcome determinative error. And what we are showing here is that the findings that were made preclude there ever being a determination of service connection. In this particular case, this veteran had a personality disorder and always had a personality disorder. So therefore, under the regulation, you couldn't find service connection for this veteran. Isn't it your view, isn't it your best argument that if there's error below, it's harmless error? Yes. Yes, that is what we are contending. And these findings by the board in 1971 and then again, the same findings are stated by the board in 2003. The findings are that this veteran had a personality disorder. In other words, it was so clear from the diagnosis what this veteran had that sending it back and saying, wrap across your knuckles, you did it wrong, do it again, it's going to end up the same way. That's correct. Certainly, the veteran hasn't shown any reason why there would be any different result on sending it back. And as the board and the veteran's board pointed out in their opinions in this matter, all of the diagnoses, including Dr. Keller's and all the other doctors, everyone was in agreement that this veteran had a personality disorder. On that point, too, I guess I was troubled by the references to, it seemed to me in the context of determining whether or not this was an adequate certification, there was consideration of additional evidence, the other statements by the other physician. And I had a hard time seeing why that, assuming it's correct, and there were other doctors that said the same thing, would bolster whether or not the adequacy of the certification with respect to this doctor. Well, because in a Q appeal, the board and the court have to look at all of the evidence. So you're saying that's the circumstance that makes this different? Well, that's why it's proper for them to go and look at the other diagnosis, because in deciding whether or not there is a clear and unmistakable error, the board and the court had to look at all of the evidence of record at that time, back in 1971, when that decision was made. And all of this evidence was of record at that time. Now, what we're contending is that Dr. Keller's statements in her report in September of 1969 were equivalent to stating explicitly that there was a clearly erroneous first diagnosis. But she didn't use that word clearly, but that her opinion is unconditional, it goes through all the evidence, and it satisfies all the purposes of the regulation. Now, I just want to make one other point here. My cough was not telling you that you were through. The veterans' in all argument here, it was contended that the court did not find that Dr. Keller's statement was a certification. That's not correct. The veterans' court found, in fact, that the September 1969 report of Dr. Keller was a sufficient certification, and I would refer the court to the portions of the veterans' court's decision that state, quote, it was not arbitrary and capricious for the board to determine that the September 1969 report, when viewed with other evidence, was a sufficient certification. So the veterans' court here did find that Dr. Keller's September 1969 report was a sufficient certification. So then the only issue really here on appeal is the narrow one of whether Dr. Keller had to use the word clearly in that certification. Just on that point of clear error and the equivalence, I mean, when we talk about acute claims, clear and unmistakable error, you think in that context, clear error, clear and unmistakable error, means something different or more than just the word error? If Congress, for instance, or the regulations had used the word error rather than clear and unmistakable error, would that be different? Well, certainly, and there's support in the case law for that. They talk about the error being one that is blatantly obvious, that any reasonable person would conclude that there is an error. In other words, so that's the equivalent, that's the additional, what more clear means when it modifies the term error, correct? Yes. And so therefore, why shouldn't we apply that same standard in the use, for the use of clear error in the regulation? Why shouldn't we say that it is different? Clear, the word clear does have meaning, does mean something. Well, I think it does mean something, but what we're saying here is it was the veteran's burden to demonstrate a clear error below, and also that that error was outcome-determinative, and he failed on both counts. He did not demonstrate that the error was outcome-determinative, and he did not demonstrate that it was a clear error. So the Court has no further questions. No further questions. Thank you, Ms. Kirshner. Mr. Wedemeyer has total time left. Thank you, Your Honor. It's disingenuous to say that it's undisputed that Mr. Fritch's diagnosis has always been personality disorder. He was removed from active duty from the United States Marine Corps with a diagnosis of schizophrenic reaction. That diagnosis remained in place. It's not a record because it postdates the Board decision here, but he continues to have a diagnosis of schizophrenic reaction or schizophrenia to this day. But that's not applicable. The point is, since he was separated from the military because of a diagnosis of schizophrenic reaction, it's disingenuous to say that all doctors have always agreed that this veteran's true diagnosis is personality disorder. And with respect to personality disorder, Mr. Fritch may have had a personality disorder. That does not mean he did not have schizophrenic reaction. They are distinct psychiatric disabilities that can coexist. Now, that, of course, is a medical determination. However, it's disingenuous to say that just because the veteran had a personality disorder in the view of Dr. Keller that he also did not concurrently have schizophrenic reaction. Can I ask you just one thing? I'll try to make it quick. But if we were here in 1972, if you had appealed the Board decision and it had come up in the regular course, obviously you wouldn't be hearing acute claims. So my question to you is, what additional burden specifically do you think is on you and your client given that we're not here in the ordinary course of the appeal? What does that mean in the context of your case, the additional burden? The additional burden would come into effect below. The issue before this court is the veterans' court's interpretation of the regulation. Of course the veterans' court found no outcome-determinative error there because it found no error. It found that the regulation had been properly applied. If this court agrees with our argument that the veterans' court misinterpreted the regulation, then the veterans' court on remand will have to determine whether that was outcome-determinative error for purposes of acute claim. And segueing that into Judge Lurie's question about harmless error, the reason there's no harmless error here is because if the severance in 1971 did not occur in accordance to law, the service connection finding has remained in place all of this time and continues to remain in place. And if the VA decided to now try to sever it, Mr. Frisch would have an opportunity, a right under the regulation, to submit additional evidence to counter any new medical opinion that they would come up with saying that the original in-service schizophrenic reaction diagnosis was clearly erroneous. So if the veterans' court did misinterpret the regulation, there certainly is prejudicial error, and there would be an opportunity for Mr. Frisch to remedy that when it returned to the agency. Now with respect to the opposing counsel's reading of the veterans' court decision on certification, saying the veterans' court found that there was a certification, I invite the court's attention to our appellant's appendix at page 9, which is page 8 of the veterans' court opinion, the bottom paragraph. Quote, having determined that the hospital summary, which was Dr. Keller's opinion, was not a new or official statement in direct response to the regional office's request for certification. Opposing counsel is referring to the ultimate conclusion of the veterans' court that the equivalent statements in conjunction with Dr. Keller's opinion constituted a certification. But there's no dispute from the veterans' court opinion that it found that Dr. Keller's opinion was not a certification as the regulation envisions. If there are no other questions, I see my time has expired. Nope. Thank you, Mr. Wiedemeyer. The case will be taken under advisement. All rise. The Honorable Court adjourns until tomorrow morning at 10 a.m. Thank you.